Filed 5/22/14  In re A.B. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

In re A.B. et al., Persons Coming Under the Juvenile Court Law.

| | |
|---|---|
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E059279 |
| Plaintiff and Respondent, | (Super.Ct.No. J248461 & J248462) |
| v. | **OPINION** |
| J.C., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Cheryl C. Kersey, Judge.  Affirmed.

Michelle L. Jarvis, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Jamila Bayati, Deputy County Counsel, for Plaintiff and Respondent.

1

Leslie A. Barry, under appointment by the Court of Appeal, for Minor J.C.

Linda S. Rehm, under appointment by the Court of Appeal, for Minor A.B.

J.C. (Father) appeals from the jurisdiction/disposition hearing involving his children, J.C., Jr. (J.) and A.B. (A.). The juvenile court found the allegations in the Welfare and Institutions Code section 300 petition,[1] which included an allegation of sexual abuse against J., true and ordered Father to participate in sexual abuse counseling. Father claims on appeal that (1) substantial evidence did not support the allegations of sexual abuse against J. as found true by the juvenile court; and (2) the juvenile court erred by ordering that Father participate in counseling specifically for sexual abuse.

We conclude the evidence supports the finding by the juvenile court that a preponderance of the evidence supports the sexual abuse allegation in the section 300 petition. As a result, the disposition order requiring counseling for Father on sexual abuse was warranted.

I

PROCEDURAL AND FACTUAL BACKGROUND

A.      *Detention*

A report was received by the San Bernardino County Children and Family Services (the Department) on March 7, 2013 that J., who was eight years old, had disclosed that his stepfather C.B. (Stepfather), and Mother "whoop him every time he is

---

[1]      All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

2

bad" and that "he just cries" when it happens. J. had a five-year-old sibling, A. Both were sons of Father.

Mother and Stepfather denied the allegations that they had beat J. Mother reported that J. had acted "outrageously" in the past. J. had poured gasoline on a couch, had attacked Stepfather, and had thrown rocks at a car window breaking it. She advised the social worker that J. had claimed in 2011 that Father had molested him and that a previous investigation by the Department had been conducted.

An investigative narrative prepared when the sexual abuse was previously reported was submitted with the petition. According to the report prepared by another social worker, J. was caught "humping" A. while they had their clothes on. It was reported by an Inland Regional Center (IRC) worker who was assigned to help Mother. Mother was reported as being "slow." J. reported that Father touched his private area. A social worker spoke with Mother on August 14, 2012. Mother confirmed that J. told her that Father had touched him. Mother was not sure at the time if the allegation was true because J. did not always tell the truth.

In addition, the investigative narrative stated that J. disclosed to the social worker that Father had sexually abused him. He denied any other abuse. A. denied that anyone had touched him and that J. told him to "hump him." J. had told another adult that he wanted to have sex. Father denied he touched J. and agreed that J. needed counseling. J. was interviewed at the Child Assessment Center (CAC) and did not disclose the abuse. At the time, the sexual abuse was found to be "inconclusive."

As for the current report to the Department, J. and A. were reported to have been living with the maternal great grandmother in San Bernardino. Mother reported that J. and A. were exposed to domestic violence in that home. Specifically, Mother had been told that one of the persons in the home had beat up his girlfriend and J. and A. had been present. Mother claimed she had no room for J. and A. at that time but had since moved and they were back in her custody.

J. was interviewed. He reported not feeling safe with Stepfather. He had observed Stepfather pull out Mother's hair and he had to pull Stepfather off of Mother. J. confirmed living with his great grandmother and he observed a man beat "this girl with a hammer." Another man in the house had "sold our stuff to the dope man." A. also reported that he saw the man beat up girls, which made him feel sad.

Mother had a previous report to the Department for J. and A. for domestic violence. In that prior case, Mother had retained custody. She had been evaluated by a psychologist and found to be mildly retarded.

On March 13, 2013, J. and A. were detained.

On March 15, 2013, the Department filed a section 300 petition against Mother and Father on behalf of J. and A.[2] For both it alleged allegations under section 300, subdivisions (b), (d) and (j). A detention hearing was held on March 18, 2013. Mother

---

[2] The Department later filed an amended section 300 petition and we will set forth those allegations in detail *post* in order to avoid confusion as to the allegations ultimately found true in this case.

requested a contested detention hearing. The juvenile court made temporary detention findings. J. and A. were to remain detained to protect their safety.

The contested hearing was conducted on March 19, 2013. Mother confirmed that Father was the father of J. and A. Mother presented the testimony of a neighbor. She had never observed any domestic violence. J. had hit Stepfather in the back with his fists. J. would not listen to Mother and Stepfather. Mother also had a woman who provided her assistance with life skills testify. She had not observed any violence between Mother and Stepfather. However, Mother had seen a doctor about a bruise on her arm that Mother claimed had been caused by Stepfather.

The trial court found a prima facie case and the children remained detained. J. had been placed in a group home and A. was in foster care. J. and A. were to be subjected to CAC examinations and interviews.

A first amended petition for A. was filed on April 8, 2013. It alleged against Mother under section 300, subdivision (b) that she had developmental delays that compromised her ability to care for the children, she had a history of domestic violence, and allowed the children to be exposed to criminal behavior and domestic violence ((b)1-(b)3). It alleged against Father under subdivision (b) of section 300, that he should have known or reasonably should have known that he was at risk of abuse or neglect while in the care of Mother ((b)4). It added additional allegations for another alleged father of A. ((b)5-(b)6). It also alleged against Father that he sexually abused A. under section 300, subdivision (d) ((d)8); and for Mother for failing to protect A. from the abuse ((d)7).

5

Finally, it was alleged under section 300, subdivision (j) that A.'s sibling had been abused ((j)9).

For J., the same first four allegations under section 300, subdivision (b) were alleged ((b)1-(b)4). It also alleged against Father that he sexually abused J. under section 300, subdivision (d) ((d)6); and for Mother for failing to protect J. from the abuse ((d)5). Finally, it was alleged under section 300, subdivision (j) that J.'s sibling had been abused ((j)7).

B.      *Jurisdiction/Disposition Report*

In a jurisdiction/disposition report filed on April 8, 2013, the Department recommended that the allegations in the amended petition be found true. It recommended that Father and Mother be granted reunification services. J. remained in a group home and A. was in foster care.

Mother had been a client of IRC since 1994 or 1995, and a worker came to her home on a weekly basis to assist her with daily living tasks, including cooking and cleaning. Mother and Stepfather adamantly denied any domestic violence.

J. was reported to have aggressive and assaultive behaviors. A. also had assaultive and aggressive behaviors. He had been stealing from the foster home.

Mother was interviewed. She reported that J. continued to claim that Father had put his finger in his buttocks, pulled on and played with his penis, and had touched him while drying him off for baths. J. and A. did not ask to see Father. Mother had previously confronted Father. He admitted to bathing J. but denied any inappropriate

6

touching. Mother called the police and the Department. Mother believed that J. did not disclose the abuse during the CAC interview because he was intimidated by the process.

Father was "shocked" and "mystified" by the allegations of sexual abuse. Father denied the allegations and prior investigations had resulted in no charges being filed against him. During the time he was alleged to have abused J. and A., he had little contact with them and was never alone with them. Father claimed he was unaware of the conditions, e.g. that they were being exposed to domestic violence, in which J. and A. were living. Father did not have stable housing in order to care for J. and A. Father wanted custody of J. and A.

The Department noted that the allegations of sexual abuse by J. and A. against Father were "vague at best," and they required further investigation.

The CAC reports from the 2012 investigation were submitted by the Department. According to the report, A. had told the interviewer that J. had sat on his head and it hurt but that they had their clothes on. A. reported that Mother "whoops" him with a shoe and a sandal on his butt. A. observed Father put his finger in J.'s "privates" while they were at their "nanny and poppy's house." A. first reported seeing this happen but then stated he knew about it because he heard J. tell Mother about it.

During an examination, A. told the examiner that he had anal pain because of his "dad." He put his finger in the air but did not describe what happened. A. had bite mark scars on his back and stomach. An examination of his anal/genital area was normal and could neither confirm nor negate sexual abuse.

J. was also examined and interviewed. The examination of his anal/genital area resulted in an abnormal exam with friable tissue found near the anal area. The abnormality may have been caused by sexual abuse or other mechanisms. During the interview, he reported no one had sexually abused him and denied he told anyone that he had been sexually abused. J. did not want to visit Father.

The report that was prepared by a sheriff's deputy on August 7, 2012, in connection with the original investigation, was also submitted. According to the synopsis prepared by the sheriff's deputy, J. claimed that Father sodomized and masturbated him. There were no witnesses to the incident and Mother was not sure if J. was telling the truth because he has mental problems and often lies. Mother was interviewed and said she found J. "humping" A. She asked him where he learned to do that and he started crying. He said Father played with his "privates."

J. was interviewed and told the sheriff's deputy that he was visiting Father during the summer and had stepped out of the shower. J. claimed that Father played with his penis by pulling on it. J. would not look directly at the officer. J. said his Father then put his finger inside his anus and then pulled it out. J. later stated that Father only masturbated him and then he said he only sodomized him. The officer asked J. why he was "humping" other kids in the bathroom at school and asking girls if they wanted to "bone." He said his friend told him to do it. Besides the incident with his Father, no one else had sexually abused him.

A follow up CAC interview was conducted with J. on May 13, 2013. J. made no disclosures of sexual abuse.

8

On May 22, 2013, a continuance was sought for the contested jurisdiction/disposition hearing. At that hearing, county counsel indicated that the social worker assigned to the case was not recommending the sexual abuse allegation against Father be found true. As such, it was the Department's position not to find the allegation true. At that time, counsel representing J. and A. asked that the allegations be pursued and found true. The matter was set for a contested hearing.

C.      *Contested Jurisdiction/Disposition Hearing*

The contested hearing was conducted on May 30, 2013. Mother submitted a waiver of rights and submitted on the section 300 petition.

At the contested hearing, Mother, Father and J. testified, along with a social worker who investigated the sexual abuse allegations in 2012, as will be provided in further detail, *post*. The juvenile court found the (b)1 through (b)4 and (d)6 allegations as to J. were true. The (d)5 and (j)7 allegations pertaining to J. were dismissed. As to A., the (b)1 through (b)6 allegations were found true, the (d)7 and (d)8 allegations were dismissed, and the (j)9 allegation was found true. Mother and Father were granted reunification services.

## JURISDICTIONAL FINDINGS

Father contends on appeal that there was insufficient evidence to support that he sexually abused J. to support the (d)6 and (j)9 allegations in the section 300 petition.

### A. *Additional Factual Background*

At the contested jurisdiction/disposition hearing, minors' counsel presented the testimony of Glenda Estrada. She investigated the original allegation of sexual abuse in 2012. J., at that time, had told her that Father pulled his penis up and down and touched his butt. Estrada considered J. to be credible. J. told Estrada he no longer wanted to visit with Father because of the abuse. Estrada did not recall any reports of A. being sexually abused.

Estrada explained that at the time it was found that the sexual abuse allegations were inconclusive. This decision was made by Estrada, Mother, CAC, and J., and based on the police report. The biggest reason for finding the allegations inconclusive was that J. later recanted his statement. Further, J. could not pinpoint any further details. Estrada admitted that J.'s sexual knowledge was not normal for a boy his age. It was not clear where he obtained that knowledge. Estrada at the time recommended counseling for J. Estrada explained she determined the allegations were inconclusive which meant that they could have happened but she could not prove they happened.

Minors' counsel also called J. to testify. J. was asked where bad touching occurred and he pointed to his groin area. J. said that Father had touched him there. J. said the touching occurred at his Father's apartment while they were in the bathroom. A.

was also present.  Father approached J. and pulled down J.'s pants.  J. was wearing shorts and a collared shirt.

J. testified that defendant played with his penis with his hand.  Father had on his clothes.  A. was in the shower and J. did not think that he saw anything.  J. started to cry after defendant finished touching him.  It made him sad.  J. did not immediately tell anyone what had happened because he was scared.  This happened when J. was six years old.  Father did not touch J. in his buttocks.  It never happened again.  J. described this happening during the summer.  J. did not remember talking to any counselors about the incident.

Mother testified that she believed J.  Mother originally questioned J. because he had a history of lying but started to believe him when she received calls from the school as to J.'s sexualized behavior.  Also, J.'s story had never changed.

Father testified he had never touched J. in an inappropriate manner.  Since J. was uncircumcised, he had explained to J. how to properly clean his penis but he insisted he had never touched him.  Father agreed that he was the biological father and agreed with being found the presumed father.

Mother's counsel argued that the sexual abuse allegations were true as to Father.  Mother had done everything she could to protect J. and A.  Minors' counsel argued that J.'s testimony was credible and the allegations should be found true.

Father's counsel objected to the allegations.  There was not enough evidence to support the allegations.  It was disconcerting that J. had denied the sexual abuse several times but testified to the sexual abuse at trial.

11

County counsel argued on behalf of the Department as follows: "Your Honor, I think, as we all know, the big issue is whether or not [Father] sexually molested [J.], and it is a preponderance of the evidence standard, which, I know, is reduced compared to a criminal matter, but in looking at the totality of the evidence, I don't know that there was enough evidence to find it true that Father molested [J.]." Further, J. described an incident at trial that did not involve sodomy, and also J. said it occurred when he was six years old which would have been 2010 and not 2012. Counsel for the Department concluded, "There is no physical evidence, and we have a victim who is giving so many different stories that I think there is insufficient information for the Court to find it true." Additionally the Department contended that if the allegations were found true, sexual abuse counseling would not be useful because Father would continue to deny the allegation.

Mother's counsel responded that children recant sexual abuse allegations all the time. It was ironic that county counsel was not acknowledging this fact.

The juvenile court ruled, "As to the petition for [J.], the Court heard the testimony of [J.]. He has recanted, yes, and he is scared, and he doesn't want to hurt his dad. My impression was that he loves his dad, along with his sibling, [A.], who [Father] is presumed. The best thing for [Father] to do is admit that he did something that was sexual in nature and inappropriate and deal with it instead of saying, 'I was showing him how to clean his foreskin on his penis.' I mean, that has to be one of the worst stories I've heard."

B.    *Mootness*

Father acknowledges that he is only contesting the findings under section 300, subdivisions (d) and (j) that he sexually abused J., and as a result, A. was also in danger. This leaves the subdivision (b) allegations against Mother and Father. As such, Father's jurisdictional challenge would result in no change as the evidence supports the dependency court's jurisdiction over J. and A. based on these allegations.

It is the general rule that "[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence. [Citations.]" (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.)

Despite the general rule, however, reviewing courts have addressed sufficiency-of-the-evidence challenges to jurisdictional findings in dependency proceedings under certain limited circumstances. Such challenges have been addressed where initial findings could affect further orders in a dependency proceeding itself. (*In re John S.* (2001) 88 Cal.App.4th 1140, 1143.)

Father insists that he was prejudiced by the erroneous jurisdictional finding because he was ordered to participate in counseling specifically addressing sexual abuse and could only have supervised visits with his children. Respondent concedes that Father should be allowed to raise his claim. It is clear that Father was required to attend

13

counseling on sexual abuse because of the jurisdictional finding. We are satisfied that the potential adverse affect on Father in the current dependency proceedings are sufficient to justify appellate review.

C.    *Analysis*

At the outset, it is important to remember that "'[t]he objective of the dependency scheme is to protect abused or neglected children and those at substantial risk thereof and to provide permanent, stable homes if those children cannot be returned home within a prescribed period of time.' [Citation.]" (*In re Celine R.* (2003) 31 Cal.4th 45, 52.) Hence, even though the Department took the position in the lower court that the evidence did not support the section 300, subdivisions (d) and (j) allegations, and minors' counsel on appeal aver that the allegations should be dismissed as they are not supported by the evidence,[3] the relevant consideration for this court on appeal is whether the juvenile court could find, by a preponderance of the evidence, that J. was being abused. If so, the juvenile court had a duty to protect both J. and A.

Additionally, it is well-settled that "[t]he juvenile court's judgment is presumed to be correct, and it is appellant's burden to affirmatively show error. [Citation.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 408.) Thus, regardless of the position taken by the

---

[3]    On January 27, 2014, counsel appointed for A. on appeal filed a letter brief on behalf of A. asserting that the jurisdictional finding under (j)9 should be reversed. On January 28, 2014, counsel appointed for J. on appeal filed a letter brief on behalf of J. that the jurisdictional finding under (d)6 should be reversed and the dispositional finding that Father participate in counseling to address the sexual abuse be reversed.

14

Department below, or by minors' counsel on appeal, it is Father's burden to prove the juvenile court erred.

"At the jurisdictional hearing, the court determines whether the minor falls within any of the categories specified in section 300. [Citation.]." (*In re Veronica G.* (2007) 157 Cal.App.4th 179, 185.) A juvenile court must base it findings on a preponderance of the evidence. (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1432.) "On appeal from an order making jurisdictional findings, we must uphold the court's findings unless, . . . there is no substantial evidence to support the findings. [Citation]" (*In re Veronica G., supra*, 157 Cal.App.4th at p. 185.)

""""The rule is clear that the power of the appellate courts begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the conclusion reached by the trier of fact." [Citation.]' [Citation.]" (*In re Tanis H.* (1997) 59 Cal.App.4th 1218, 1227.) "We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence." (*In re T.W.* (2013) 214 Cal.App.4th 1154, 1161-1162.) "[W]e must indulge in all reasonable inferences to support the findings of the juvenile court [citation], and we must also '. . . view the record in the light most favorable to the orders of the juvenile court.' [Citation .]" (*In re Luwanna S.* (1973) 31 Cal.App.3d 112, 114.)

A child comes within the jurisdiction of the juvenile court under section 300, subdivision (d) when the court finds as follows: "The child has been sexually abused, or there is a substantial risk that the child will be sexually abused, as defined in Section 11165.1 of the Penal Code, by his or her parent or guardian or a member of his or her

15

household, or the parent or guardian has failed to adequately protect the child from sexual abuse when the parent or guardian knew or reasonably should have known that the child was in danger of sexual abuse."

Section 300, subdivision (j) provides that a child comes within juvenile court jurisdiction as follows: "The child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

Here, J.'s credible statements at the jurisdictional hearing support the juvenile court's finding that the section 300, subdivisions (d) and (j) allegations were true. (See *In re Dirk S.* (1993) 14 Cal.App.4th 1037, 1044-1045.) J. testified at the hearing that he was in the bathroom when Father entered and pulled his pants down. Father then proceeded to play with his penis. The juvenile court observed J. during his testimony and obviously found him to be credible. On appeal, we must accept the juvenile court's determination as to credibility. (*In re T.W., supra,* 214 Cal.App.4th at pp. 1161-1162.)

Father points to the many inconsistencies in J.'s statements. J. initially told Mother that Father had both pulled his penis up and down, and that he put his finger in his anus. J. then told a responding sheriff's deputy the same story but also changed his story to either he was masturbated or sodomized but not both. After these initial

16

statements, J. denied there was any sexual abuse. Had J. not testified at the hearing, these inconsistencies may have impacted the juvenile court's decision. However, J. testified in front of the juvenile court. The juvenile court was able to observe his demeanor and found his statements in court to be truthful.

Father points to the fact that no criminal conviction was sought for the sexual abuse. A criminal conviction requires proof beyond a reasonable doubt, while a finding of sexual abuse in a dependency case requires proof by a preponderance of the evidence. (*In re J.K., supra,* 174 Cal.App.4th at p. 1432.) The failure to file for dismissal of criminal charges does not determine whether there may be a finding of sexual abuse in a dependency case. (See *In re Sylvia R.* (1997) 55 Cal.App.4th 559, 562-563.)

Father also complains that the forensic examination revealed that there was an abnormality, but "it was not from sexual abuse." The report is not necessarily supportive of this position. The report showed an abnormality that may have been caused by sexual abuse *or* some other cause. Nonetheless, a lack of physical evidence in a sexual abuse case is not determinative. (See *In re Lucero L.* (2000) 22 Cal.4th 1227, 1238.)

Finally, Father contends that the initial social worker, the Department and county counsel all concluded there was inconclusive, or not enough, evidence to sustain the sexual abuse allegations. However, as noted *ante*, the purpose of the dependency proceedings is to protect the child from abuse. (*In re Celine R., supra,* 31 Cal.4th at p. 52.) The juvenile court found that there was sexual abuse, and that finding was supported by J.'s testimony. Any objection by the parties is not determinative of whether there was substantial evidence of the allegation found by the juvenile court.

17

The juvenile court properly concluded that a preponderance of the evidence established that J. had been sexually abused by Father.

## III

## DISPOSITIONAL FINDING

Father contends that the juvenile court erred by requiring him to attend counseling to address sexual abuse. His argument is dependent upon this court concluding the jurisdictional finding under section 300, subdivisions (d) and (j) should be reversed.

"After the juvenile court finds a child to be within its jurisdiction, the court must conduct a dispositional hearing. [Citation.]" (*In re N.M.* (2011) 197 Cal.App.4th 159, 169.) "The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly." (*In re Baby Boy H.* (1998) 63 Cal.App.4th 470, 474.) In reviewing an order for abuse of discretion, we "'must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling. [Citation.]'" (*In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

Based on the juvenile court's determination that J. had been sexually abused by Father, counseling to address the abuse was clearly warranted and in J.'s best interests.

## IV

## DISPOSITION

The juvenile court orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI

J.

We concur:

HOLLENHORST

Acting P. J.

CODRINGTON

J.